[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON POST-TRIAL MOTIONS
The fact that the jury found that the only negligence shown was the failure to chart or note patient condition after the IV procedure rather than concluding that the IV procedure with its multiple attempts to insert a needle in the plaintiffs hand constituted negligence makes this case easier to analyze.
In other words, claims regarding the lack of expertise of the plaintiffs medical expert may be persuasive on the question whether this expert was qualified to give an opinion as to the appropriate procedure for inserting IV needles. But the court does not really have to decide this issue because what the jury could have believed to be the basis of liability is the so-called failure to chart in light of the expert's testimony on the cause of the plaintiffs present condition. The expert testified that seepage of blood into the "compartment" represented by the back of the hand caused pressure on the nerve which in turn led to the nerve injury which is at the root of the plaintiffs present complaints. Furthermore, failure to chart by the nurses treating the plaintiff during the IV procedure, in the expert's opinion, was related in a causative sense to the just referred to mechanism of injury.
The first issue is the qualifications of this witness to render these opinions. As stated, objections to this expert's opinion on the insertion of IV needles may be well taken, but we are now talking about nerve damage by another mechanism than needle insertion and the possible causes of such damage in light of the failure to chart.
The doctor did a residency training in neurology in 1973. He CT Page 3505 was chief resident in neurology at Yale. He then became a professor in neurology at the University of Pennsylvania. He became Board certified in that specialty in 1978 and was certified by the American Academy of Pain Management in 1991. He presently practices neurology which he defined as "the medical specialty that deals with diseases of the brain, the spinal cord and nerves . . ." He also practices pain management. He presently teaches neurology rotation at the Yale School of Medicine. He has published numerous articles in various medical journals on the diagnosis and treatment of neurological pain conditions. The doctor testified that pain management deals with pain that starts in the nervous system; this discipline is related to psychiatry and neurology.
The plaintiffs doctor testified with a reasonable degree of medical probability that the injury causing this lady's condition was the swelling caused to her hand by the IV procedure which damaged the nerves in the hand. A direct injury to the nerves is not necessary to cause RSD, the condition which the plaintiff suffered from. The doctor was certainly qualified to make that observation. Dr. Goldberger, the defense expert, certainly differed with Dr Merikangas on whether the RSD condition the plaintiff suffered from could be caused by swelling to the back of the hand — to him, it was not a restricted enough "compartment" to cause pressure on the nerve. But Dr. Goldberger testified that damage to the nerve can cause the condition. He also testified that the more trauma that is caused, the more likely that RSD could develop, although both doctors testified that the condition could be caused by a variety of types of trauma of varying degrees of intensity.
The plaintiffs expert also testified that the sooner an injury involving bleeding and swelling under these circumstances is treated, the less likely there will be consequences harmful to the patient. The important factor is to keep the swelling down which makes sense since pressure on the nerve can be caused by swelling. At one point in his direct, the plaintiffs expert stated immediate application of a compressive dressing was necessary and treating the area affected with ice. At one point during the cross, he seemed to testify that treatment with ice perhaps would not have been of any benefit.
It is in the foregoing factual context that the court agrees with defense counsel that the resolution of the issues raised by the post-trial motions basically come down to a question of CT Page 3506 causation. Causation in light of the theory on which the jury, through its responses to interrogatories, found for the plaintiff.
In other words, the defense expert and the plaintiff expert both agreed that it was a deviation from the standard of care not to note the difficulties that occurred during the IV procedure. The plaintiffs expert also stated it was a deviation not to indicate the patient's complaints about pain in her hand when the procedure was done and also he stated that it was a violation of the standard of care for the nurses not to indicate in the chart what they had done to deal with the patient's complaints and the consequences of the IV procedure. Why is that? Because the doctors were operating on the other hand and would have no necessary occasion to examine the hand where the procedure occurred. If that is so, how could any immediate treatment which the plaintiffs expert says is important possibly be administered?
It will not do in this factual context for the defendant to say when the plaintiff was discharged the plaintiff had some kind of dressing on her hand and the plaintiffs lawyers never asked whether this was a compressive dressing. That is why charting and notation is required so resolution of these issues does not shift to the person least able to explain and describe the treatment that was rendered and its adequacy. The burden of explanation lies with the defendant to establish the steps taken in light of the absence of charting were adequate to deal with the necessity of providing immediate treatment.
The absence of charting interferes with the ability of medical personnel to not only provide required treatment but to ascertain whether other medical personnel in the chain of treatment took necessary and sometimes immediately necessary steps. In the absence of such charting, how can the often sedated, in pain patient who has just undergone one-day surgery be expected to negate the possible consequences of the absence of charting by being required to testify as to what or what was not done for her as to matters beyond her knowledge and expertise.
It is interesting to note that the complaint here raised the charting issue in terms of failure to note conditions of the patient after the IV procedure. But the plaintiffs expert also testified without objection that it was a deviation from the standard of care for failure to note actual treatment given to the patient in response to an observed or complained about CT Page 3507 condition. This, to the court, adds even more weight to a burden shifting analysis on causation. Pleadings, of course, can be amended even after trial to conform to the proof.
In any event, this jury could have concluded that actual bleeding and swelling could have commenced here at the time of or shortly after the IV procedure. That, coupled with the expert's testimony, allowed them to reach the conclusion they did. As to other matters raised by the defendant in its post-trial motions, they were fully explored at trial and the court stated the reasons for its rulings at that time.
The defendant's post-trial motions are denied.
Corradino, J.